# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANGEL MAYAN,

        Plaintiff,

v.                                                                          Case No. 06-C-113

ADMINISTRATOR BROWN COUNTY JAIL
AND JUVENILE DETENTION CENTER,
ROB WEED, PAM PAGE, NORB WENDRICKS,
IDA TISKE, JOHN JADIN, and KEN WHITE,

        Defendants.

# ORDER

        Plaintiff Angel Mayan, who is currently incarcerated at the Waupun Correctional Institution, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis* on a claim that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. The August 23, 2006, amended complaint (complaint) alleges that, while detained at the Brown County Jail, the defendants "stonewalled" the plaintiff's attempts to get medical treatment for his mental illness, causing him pain and suffering. The defendants have filed a motion for summary judgment, which will be addressed herein.

## STANDARD FOR SUMMARY JUDGMENT

        Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the nonmovant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## FACTS[1]

The plaintiff alleges that he was confined at the Brown County Jail (Jail) between August 2004 and September 2005. (Compl. ¶ IV.A.) Since 2001, defendant Pam Page has been the Head Nurse in the Health Services Unit (HSU) at the Jail. (Affidavit of Pam Page [Page Aff.] ¶ 1.) In that capacity, Nurse Page has the duties of attending to the medical needs of inmates, diagnosing and treating illnesses and injuries, and arranging for professional consultation when needed. (Page Aff. ¶ 2.)

If a prisoner requests an in-person meeting with a member of the medical staff, the prisoner is allowed to do so. (Page Aff. ¶ 3.) Every cell block has a specific nurse assigned to administer to the medical needs of those inmates. *Id.* Nurse Norb Wendricks was assigned as the nurse to the pod or cell block in the Jail that housed the plaintiff during the relevant period of time he was incarcerated at the Jail. (Affidavit of Norbert Wendricks [Wendricks Aff.] ¶ 2.)

Under Jail policy, a nurse or officer will make rounds of the Jail to dispense medications to those prisoners who require them. (Page Aff. ¶ 5.) As the individual is making rounds, each inmate is free to discuss with them whatever medical concerns the prisoner has, or the inmate may complete an "Inmate Request for Medical/Dental/Psychiatric Care" form that is available to every prisoner within the

---

[1] Facts are taken from the defendants' March 14, 2007, Proposed Findings of Fact, the plaintiff's April 13, 2007, Affidavit of Angel Mayan, and the plaintiff's May 29, 2007, Supplemental Information.
The plaintiff also filed Proposed Findings of Fact which, for the most part, are actually responses to the defendants' proposed findings of fact. In any event, this filing is not sworn nor does it refer to any sworn or certified documents in the record. As such, the court will not consider it on summary judgment. *See* Fed. R. Civ. P. 56(e).

Jail. (Page Aff. ¶ 6.) The purpose of the form is to detail for the Jail medical staff whatever medical concerns the prisoner has. *Id.* Once completed, the form is sent to the HSU where the nurses attempt to address the prisoner's concerns in the form of a written response. (Page Aff. ¶ 7.) In the event the problem cannot be resolved with a written response, or the prisoner still has concerns, the prisoner will be seen by the nurses in their cell or in the HSU at the Jail. (Page Aff. ¶ 8.)

Immediately after every prisoner is brought to the Jail, they are interviewed and a complete medical screen and suicide risk evaluation is done by a Jail officer to determine, among other things, an incoming inmate's health. (Affidavit of Captain John Jadin [Jadin Aff.] ¶ 2.)[2] Upon arriving at the Jail, the plaintiff self-reported complaints of a contagious infection, history of venereal diseases, and shortness of breath/chronic cough. (Page Aff. ¶ 9.) He reported being on Xanax and Klonapin for medication. *Id.* However, when staff called his former doctor regarding whether there was an active prescription, they were informed that a prescription was not on file. *Id.*

Nurse Norb Wendricks recalls meeting with the plaintiff, face-to-face, on a daily basis and addressed his medical concerns accordingly. (Wendricks Aff. ¶ 4.) On June 14, 2005, the plaintiff completed an "Inmate Request for Medical/Dental/Psychiatric Care" form on which he wrote in part: "The psychiatric I was seen in on the Sophie Beaumont Bldg. 111 S. Jefferson. and His name is Dr.

---

[2] Since July of 2004, defendant Jadin has been employed as the Jail Administrator for the Brown County Jail and has been responsible for the day-to-day operations and administration of the Jail. (Jadin Aff. ¶ 1.)

- 4 -

Jhonson(sic)." (Wendricks Aff. ¶ 5, Ex. A.) As a result of this request, on or about June 14, 2005, Nurse Wendricks called Dr. Edward Johnson's office in Green Bay, Wisconsin, to determine what anxiety medications the plaintiff was taking upon being incarcerated. (Wendricks Aff. ¶ 6.) Nurse Wendricks learned that the plaintiff did not have any current prescriptions for medication from Dr. Johnson. (Wendricks Aff. ¶ 7.) Nurse Wendricks was also informed that the plaintiff's file had been closed due to numerous missed appointments and that his final treatment date was January 27, 2004. *Id.* Nurse Wendricks reviewed the records in order to develop a plan of care for the plaintiff. (Wendricks Aff. ¶ 8.) Nurse Wendricks learned that the plaintiff was not on Xanax or Klonapin upon entry into the Jail as he did not have an active prescription. *Id.* Based on his medical training and experience and in light of the plaintiff's concerns about his anxiety, and after examining the plaintiff, Nurse Wendricks found no objective evidence of a need for medication such as Xanax and Klonapin. (Wendricks Aff. ¶ 9.)

It is extremely inadvisable in a setting such as the Brown County Jail to prescribe medications such as Xanax and Klonapin absent clear objective evidence that it is needed, as these types of medications are often abused or sold to other inmates. (Page Aff. ¶ 10.)

Nurse Wendricks based his plan of care for the plaintiff on a number of factors. (Wendricks Aff. ¶ 11.) Those factors included his review of the plaintiff's medical records, the results of his interactions and discussions with the plaintiff and his impressions of the plaintiff's behavior, and observations the other Jail nurses

- 5 -

made of the plaintiff outside of his presence. *Id.* On all accounts, the plaintiff acted and proceeded in a normal nature not indicative of anxiety requiring medication. (Wendricks Aff. ¶ 12.) The plaintiff presented with subjective complaints of anxiety but with no objective evidence to confirm those complaints. *Id.* Were Nurse Wendricks to discover objective evidence that the plaintiff's condition was sufficiently serious to warrant the use of addictive medications such as Xanax and Klonapin, he would have recommended that a medical doctor consider them to be prescribed in an appropriate measure. (Wendricks Aff. ¶ 13.) Nurse Wendricks has not seen a single objective finding to warrant providing a plan of care other than the one that was developed for the plaintiff. (Wendricks Aff. ¶ 14.)

The plaintiff has at various times complained to the medical staff of pain associated with his shoulder, pain associated with his stomach, mouth sores and his gonorrhea and chlamydia. (Page Aff. ¶ 12.) Nurse Wendricks or one of the other nurses, depending on the cell block to which the plaintiff was assigned, has met with the plaintiff to discuss each of those concerns and has addressed each of them appropriately. (Page Aff. ¶ 13.)

The plan of care for the plaintiff related to his anxiety claim falls within the applicable standard of care. (Page Aff. ¶ 14.) The care provided by Nurse Wendricks and the other nurses has exceeded the standard of care necessary. (Page Aff. ¶ 15.)

The Brown County Jail Policy and Procedure Handbook includes an Inmate Grievance Procedure which provides for resolution of informal and formal

grievances, including a procedure that continues through the chain of command to the Jail Administrator. (Jadin Aff. ¶ 4, Ex. B.) Captain Jadin is not aware of any grievances by the plaintiff that have not received an appropriate response from Jail personnel. (Jadin Aff. ¶ 5.)

Medical treatment is carried out by the HSU at the Jail. (Jadin Aff. ¶ 6.) Decisions regarding the course of medical treatment for the plaintiff are under the purview of the HSU. *Id.* Captain Jadin is not aware of any basis to dispute the course of treatment provided to the plaintiff by the HSU. (Jadin Aff. ¶ 7.)

While detained at the Jail, the plaintiff submitted various requests for medical treatment. Upon arrival at the Jail on August 6, 2004, the plaintiff informed the Jail that he was taking medication for panic attacks and anxiety, and that he had been treated for mental illness. (Affidavit of Angel Mayan [Mayan Aff.] ¶¶ 3-4, Exs. A-B.)

On June 14, 2005, the plaintiff filed a medical request indicating the doctor that he had seen on "the street" and the following day defendant Page indicated that she talked to Human Services and that his file was closed. (Mayan Aff. ¶ 5, Ex. C.) On August 2, 2005, the plaintiff filed a medical request for help because he had chest pain due to his anxiety and panic attacks. (Mayan Aff. ¶ 6, Ex. D.) Nurse Wendricks answered this request, stating that Human Services had closed his file because he had not been seen there in a long time because he did not keep his appointments, that he did not need medication, and that he should read the section on anxiety in a self-help book that they were sending him. *Id.*

On August 10, 2005, the plaintiff sent two requests to the HSU. (Mayan Aff. ¶ 7, Exs. E, F.) In his first request, the plaintiff explained that the doctor he saw on the street was the same doctor who came to the Jail and that the only reason he had not taken medication for so long was because he had been in Jail for over a year and was not allowed to see a doctor. (Mayan Aff. ¶ 7, Ex. E.) In the second request, the plaintiff asked to see a psychiatrist because he was mentally ill and he needed medication for anxiety, depression, hearing voices, and anger. (Mayan Aff. ¶ 7, Ex. F.) Defendant Tiske responded that they would consult with a doctor and get back to him. *Id.* On August 22, 2005, the plaintiff filed a request asking what the doctor had decided. (Mayan Aff. ¶ 8, Ex. G.) On September 2, 2005, Nurse Wendricks responded and repeated that the plaintiff had not been on medication for over one year and that he missed appointments when he was taking it. *Id.*

On August 10, 2005, the plaintiff filed a request to the Jail first shift supervisor stating that he needed medical help and that he was not getting any. (Mayan Aff. ¶ 9, Ex. H.) However, this request was sent back to him indicating that he should use the correct request form. *Id.*

On August 26, September 11, and September 18, 2005, the plaintiff filed general requests asking if his grievance filed on August 10, 2005, had been received and whether a decision was made. (Supp. Info. ¶ 1, Exs. K - M.)

**ANALYSIS**

The defendants contend that the plaintiff's claims must be dismissed because: 1) there is no underlying constitutional violation since the plaintiff understood and

- 8 -

availed himself of procedures for obtaining medical treatment and was not denied medical care; 2) qualified immunity compels dismissal of the claims against the individual defendants; 3) the denial of medical treatment claim against John Jadin must be dismissed because there is no allegation that he personally participated in the plaintiff's claims; 4) the plaintiff's official capacity claims must be dismissed because there is no underlying constitutional violation and because there is no allegation of an unconstitutional municipal/jail policy causally related to the alleged deprivations; and 5) the plaintiff failed to exhaust administrative remedies.

The plaintiff contends that the defendants' denial of his requests for medical care to treat his mental illness caused him pain and suffering and violated his constitutional rights. He maintains that the defendants were deliberately indifferent to his serious medical needs.

**1.     Exhaustion of Administrative Remedies**

The court will first address the defendants' contention that the plaintiff failed to exhaust administrative remedies. *See Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999) (exhaustion of administrative remedies is a condition precedent to suit)).

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

- 9 -

Case 2:06-cv-00113-JPS   Filed 01/30/08   Page 9 of 15   Document 133

42 U.S.C. § 1997e(a). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require").

Pursuant to the Brown County Jail Handbook Inmate Grievance Procedure, which provides for resolution of informal and formal grievances, an inmate who has a grievance should try to resolve the problem with the Housing Corporal. (Jadin Aff. ¶ 4, Ex. B. at 18.) If that is unsuccessful, a grievance should be presented in writing, signed and dated, and then forwarded to the Jail Lieutenant within 48 hours of the incident. *Id.* If not resolved at this level, then the inmate should present the grievance in writing to the Jail Administrator. *Id.*

In support of their argument that the plaintiff failed to exhaust his administrative remedies, the defendants aver that Captain Jadin "is not aware of any grievances by Mr. Mayan that have not received an appropriate response from Jail personnel." (Defs.' Br. in Support of Mot. for Summ. J. at 16; Jadin Aff. ¶ 5.) The defendants contend that the plaintiff cannot establish that he exhausted the grievance procedures provided by the Jail.

The plaintiff contends that he used the Jail grievance system to request medical care for his mental illness. He asserts that he wrote to the first shift lieutenant "more than once and he never answer[ed] my request how ever [sic] one of my request[s] he forwarded[ed] to HSU who forwarded back to me asking me to use the proper form which, I already had and was denied[.]" (Pl.'s Br. in Opp'n to Defs'. Mot. for Summ. J. at 1.) The plaintiff further asserts that he wrote to the warden but he never responded or dealt with the problem. Attached to the plaintiff's affidavit are several request forms that he submitted to either medical personnel or the first shift lieutenant. (*See* Mayan Aff. ¶ ¶ 5-9, Exs. C-H.)

Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)). Based on this record, the court is unable to conclude that the plaintiff failed to exhaust his administrative remedies.

**2.     Constitutional Violation**

The defendants contend that the undisputed facts reveal that no constitutional violation took place. It is well-established that a pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to adequate medical care. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) (citations omitted). Due process rights are at least as great as the protections afforded a convicted prisoner under the Eighth Amendment. *Id.* Accordingly, when considering a pretrial detainee's claim of inadequate medical care, the analogous standards under the Eighth Amendment are often used. *Id.*

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. *See Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1371.

Neither party addressed whether the plaintiff's mental health issues constitute a "serious medical need." The court doubts that they do. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (the need for a mental illness to be

- 12 -

treated may be considered a serious medical need if it could result in significant injury, such as death by suicide, or the unnecessary and wanton infliction of pain). However, the court will focus its analysis on the deliberate indifference prong of a medical care claim.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42).

It is undisputed that when he arrived at the Jail on August 6, 2004, the plaintiff informed the Jail that he was taking medications for panic attacks and anxiety, Xanax and Klonapin. When Jail staff called the plaintiff's former doctor regarding whether there was an active prescription, they were informed that a prescription was not on file.

On June 14, 2005, the plaintiff submitted an inmate request form in which he stated the name and contact information for the psychiatrist he was seeing prior to detention at the Jail. Defendant Nurse Wendricks contacted that office to determine what anxiety medications the plaintiff was taking prior to being incarcerated. Nurse

- 13 -

Case 2:06-cv-00113-JPS   Filed 01/30/08   Page 13 of 15   Document 133

Wendricks learned that the plaintiff did not have any current prescriptions for medications from that doctor, that the plaintiff's file had been closed due to numerous missed appointments, and that his final treatment date was January 27, 2004. After a review of the plaintiff's records, upon learning that the plaintiff did not have an active prescription for Xanax or Klonapin upon entry to the Jail, and upon examining the plaintiff, Nurse Wendricks found no objective evidence of a need for medication such as Xanax or Klonapin. The plaintiff presented with subjective complaints of anxiety but with no objective evidence to conform those complaints. If Nurse Wendricks had discovered evidence that the plaintiff's condition was sufficiently serious to warrant the use of Xanax and Klonapin, he would have recommended that a medical doctor consider them to be prescribed. However, Nurse Wendricks had not seen a single objective finding to warrant providing a plan of care other than the one that was developed for the plaintiff.

A plaintiff hoping to establish deliberate indifference to a serious medical need who has received medical care must show that the treatment he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a serious medical condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Mere disagreement with a doctor's medical judgment is insufficient to establish deliberate indifference. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003). Likewise, inadvertent error, negligence, malpractice, or even gross negligence is insufficient. *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002).

The plaintiff has not come forward with specific facts to show that the defendants' failure to prescribe him the medication that he wanted for his mental illness was anything more than a disagreement over the course of treatment. On the basis of this record, no reasonable juror could find that the defendants were deliberately indifferent to the plaintiff's medical needs. Thus, the defendants' motion for summary judgment will be granted.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #98) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 30th day of January, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge